FILED

UNITED STATES DISTRICT COURT

MAR 3 0 2017

DISTRICT OF SOUTH DAKOTA

CLERK

NORTHERN DIVISION

| | |
|---|---|
| FIRST STATE BANK OF ROSCOE, and JOHN R. BEYERS, | 1:16-CV-1029-RAL |
| Appellants, | |
| | OPINION AND ORDER AFFIRMING BANKRUPTCY COURT DECISION |
| vs. | |
| BRAD ALLEN STABLER, and BRENDA LEE STABLER, | |
| Appellees. | |

First State Bank of Roscoe (FSBR) and John Beyers (collectively Appellants) appeal the bankruptcy judge's decision to sanction them for violating the discharge injunction in Brad and Brenda Stablers' bankruptcy case. Appellants contend that the bankruptcy judge's decision was barred by preclusion principles and incorrect on the merits. For the reasons explained below, this Court affirms.

I.    **Facts**

This case has a long procedural history, including a jury trial, a court trial, several opinions by a South Dakota circuit judge, two orders from a bankruptcy judge, and opinions from both the Supreme Court of South Dakota and the Bankruptcy Appellate Panel (BAP) of the Eighth Circuit. This Court draws the facts from these prior opinions and orders as well as from

the Appendix filed by Appellants.[1]   In 1999, Brad and his wife Brenda started an agriculture business called Edmunds County Ag Services, Inc. (ECAS). Stabler v. First State Bank of Roscoe, 865 N.W.2d 466, 469 (S.D. 2015). The Stablers funded ECAS by borrowing money from FSBR, whose president at that time was Beyers. Id. at 469; App. 457. FSBR's loans to the Stablers were secured by liens on the Stablers' property and a personal guarantee from Brad. Stabler, 865 N.W.2d at 469; App. 457–58. FSBR also held mortgages on certain property of Brad's parents, Stan and Rose Stabler, as security for some of ECAS's debt. Stabler, 865 N.W.2d at 469–70; App. 457.

Brad liquidated ECAS in 2002 after it proved unsuccessful. Stabler, 865 N.W.2d at 470. Beyers then discussed the idea of filing for bankruptcy with the Stablers and suggested counsel for them to do so. App. 457. Brad and Brenda filed a Chapter 7 bankruptcy petition in May 2003. Stabler, 865 N.W.2d at 470; App. 154–79. Brad and Brenda's bankruptcy schedules listed FSBR as a secured creditor with a claim for $225,816.36, although the debt Brad and Brenda actually owed FSBR at that time approximated $600,000. App. 06, 166. FSBR received prompt notice of the bankruptcy petition. App. 06. Brad and Brenda received a bankruptcy discharge in August 2003, and FSBR received notice of the discharge. App. 07. The discharge eliminated Brad's personal guaranty of ECAS's debt but did not eliminate FSBR's liens on Brad and Brenda's property. Stabler, 865 N.W.2d at 470; see also Venture Bank v. Lapides 800 F.3d 442, 445 (8th Cir. 2015).

In March 2004, Beyers convinced all four Stablers to sign a $650,000 promissory note along with a collateral real estate mortgage (CREM) covering nearly all of the Stablers' real property. Stabler, 865 N.W.2d at 470, 472; App. 458. The March 2004 note and CREM at least

---

[1]Citations to pleadings from the Stablers' bankruptcy case will be "BR Doc." followed by the document number in the CM/ECF system.

in part refinanced and secured pre-bankruptcy loans that FSBR had previously made to ECAS and all four Stablers. Stabler, 865 N.W.2d at 470, 472; App. 08–09, 14. According to the Supreme Court of South Dakota, the 2004 note and CREM included "the exact same amount" and "the same form of debt as existed prior to Brad and Brenda's bankruptcy." Id. at 470. The $650,000 note was divided three ways[2] to others with whom Beyers or FSBR had relationships: a $416,000 note assigned to a partnership called Schurss, a $213,000 note assigned to Roger Ernst, and a $21,000 note assigned to a company called H&K Acres. Id. at 472 n.6; App. 08–14. Brad and Brenda paid the $21,000 note off, and the other two notes were eventually assigned to Beyers. Stabler, 865 N.W.2d at 472 n.6; App. 08–14.

In May 2004, Beyers assisted Brad and Brenda in getting a $150,000 loan from Ipswich State Bank. Stabler, 865 N.W.2d at 470; Stabler v. Beyers (In re Stabler), 418 B.R. 764, 766–67 (B.A.P. 8th Cir. 2009). Beyers guaranteed this loan, which was secured by a lien on Brad and Brenda's property. In re Stabler, 418 B.R. at 767; Stabler, 865 N.W.2d at 470. Brad and Brenda used the Ipswich loan to pay FSBR, although it is not entirely clear whether they were paying off valid liens and post-discharge debt or debts that had been discharged in their bankruptcy.[3] In re

---

[2]The division of the $650,000 note is difficult to track as it involved multiple transactions and assignments. In March 2004, the Stablers executed a $416,000 promissory note in favor of Schurrs and an agreement that FSBR could assign a $416,000 interest in the CREM to Schurrs. App. 09. In April 2004, the Stablers executed similar documents with respect to Ernst in the amount of $213,000. App. 10. Later in 2004, FSBR assigned a $416,000 interest in the 2004 CREM to Schurrs and a $213,000 interest in the 2004 CREM to Ernst. App. 10–11. On March 21, 2005, the Stablers executed a $213,000 promissory note in favor of Schurrs stating that it was being made "for the express purpose of renewal of real estate mortgage and shall be secured by a Mortgage with even date herewith." App. 11. The Stablers executed a $629,000 mortgage in Schurrs' favor that same day. App. 11. In 2007, Ernst executed a release of the mortgage that FSBR had assigned to him in 2004. App. 11. In 2008, Schurrs assigned to Beyers its promissory notes from the Stablers, its interest in the 2004 CREM, and its interest in the 2005 mortgage. App. 11–12.
[3]The BAP said that Brad and Brenda used the proceeds of the Ipswich State Bank loan "to pay off some of their pre-petition secured debt to FSB, in order to retain the collateral securing the

Stabler, 428 B.R. at 767; Stabler, 865 N.W.2d at 470. Brad and Brenda eventually defaulted on the loan, and the Ipswich State Bank assigned the debt and security to Beyers. In re Stabler, 418 B.R. at 767; Stabler, 865 N.W.2d at 470.

In May 2007, after FSBR attempted to collect on some of the Stablers' debt, all four Stablers filed an action in state court asking the judge to determine how much money they actually owed FSBR, Ipswich State Bank, Ernst, and Schurrs. App. 256, 262–65. The Stablers amended their complaint in 2008 to add Beyers as a defendant and assert claims for fraud, breach of fiduciary duty, and conspiracy. App. 269–77. The amended complaint alleged that Beyers and FSBR knew that the debt refinanced in the $650,000 note had been discharged in bankruptcy yet misrepresented that Brad and Brenda still owed this money. App. 273.

FSBR and Beyers answered the amended complaint and asserted counterclaims against the Stablers. App. 491–530. Counts 1 and 2 of Beyers's counterclaim sought to recover on the loan from Ipswich State Bank and to foreclose on the property securing that loan. App. 503–06, 521. Counts 3 and 4 of Beyers's counterclaim concerned the $650,000 promissory note. App. 506–08. Count 3 of the counterclaim sought recovery on the $416,000 portion Beyers obtained from Schurrs while count 4 of the counterclaim sought recovery of the $213,000 portion Beyers obtained from Schurrs. App. 506–08, 521. Counts 3 and 4 of the counterclaim both stated that Beyers was "requesting judgment against Brad and Brenda Stabler only for those amounts determined not to be discharged in their prior Chapter 7 bankruptcy." App. 507–08, 521. As an affirmative defense, Brad and Brenda asserted that the debt Beyers sought to recover in counts 1, 3, and 4 of the counterclaim was discharged in bankruptcy. App. 290, 292, 294.

---

debt, and to pay off loans that FSB had made to the Debtors post-petition." In re Stabler, 418 B.R. at 767. The Supreme Court of South Dakota said "[t]he proceeds from this loan went to FSB, but it is still disputed whether the proceeds paid off valid liens or reaffirmed discharged debt." Stabler, 865 N.W.2d at 470.

Beyers moved for summary judgment on counts 1 and 2 of his counterclaim in mid-January 2009. App. 306–07. Before the state court could rule on Beyers's motion, Brad and Brenda filed an adversary complaint against Beyers in bankruptcy court. App. 584–89. Brad and Brenda styled their filing as an adversary complaint, although in oral argument to this Court all parties recognized that the filing could have been by way of a motion. In the adversary complaint, Brad and Brenda asked the bankruptcy judge to declare that the debt Beyers sought to recover in his counterclaim was discharged and to hold him in contempt for violating the discharge injunction. App. 588.

In May 2009, the state court granted Beyers summary judgment on counts 1 and 2 of his counterclaim. App. 321–23. The state court reasoned that a bankruptcy discharge does not eliminate liens on the debtor's property, that Brad and Brenda had obtained a loan from Ipswich State Bank after receiving their discharge, and that they had used some of this loan to pay secured debts to FSBR. App. 321–22. Because Brad and Brenda were in default, the state court concluded that Beyers could foreclose on the collateral securing the loan. App. 321–22.

Appellants then moved to dismiss the adversary complaint filed in bankruptcy court. They argued that the adversary complaint's allegations concerning the Ipswich State Bank loan should be dismissed because the state court's decision on that issue had preclusive effect in the bankruptcy proceeding. App. 609–10. As to the adversary complaint's allegations concerning the $650,000 promissory note, Appellants argued that counts 3 and 4 of Beyers's counterclaim made clear that he was only seeking to recover debt that the state court determined was not discharged in Brad and Brenda's bankruptcy. App. 614–15. Alternatively, Appellants asked the bankruptcy court to abstain under 28 U.S.C. § 1334(c)(1) from deciding whether the debt Beyers sought to recover was discharged in bankruptcy. App. 615–18. Brad and Brenda responded with

several arguments, including that the Ipswich State Bank loan and the $650,000 promissory note were invalid reaffirmation agreements. App. 636, 644. In bankruptcy parlance, "[a] reaffirmation agreement is one in which the debtor agrees to repay all or part of a dischargeable debt after a bankruptcy petition has been filed." Venture Bank, 800 F.3d at 445 (quotation omitted). Section 524(c) of the Bankruptcy Code provides that reaffirmation agreements are unenforceable unless, among other requirements, they are made before the discharge and are filed with the bankruptcy court. 11 U.S.C. § 524(c)(1), (3). Brad and Brenda argued that the Ipswich State Bank loan and the $650,000 note were unenforceable because these agreements were never filed with the bankruptcy court.

In a July 2009 oral order, the bankruptcy judge dismissed Brad and Brenda's adversary complaint based on the failure to state a claim and a decision to abstain under § 1334(c)(1). App. 333-355, 699. The bankruptcy judge found that the state court's May 2009 summary judgment order was entitled to preclusive effect and thus barred Brad and Brenda's claims concerning the Ipswich State Bank loan. App. 347–48. As for the $650,000 note, the bankruptcy judge reasoned that the language of counts 3 and 4 of the counterclaim undercut Brad and Brenda's assertion that Beyers was violating the discharge injunction:

> With respect to the debts described in counts three and four of Beyers' state court counterclaim, the analysis is much simpler. In both counts, Beyers states unambiguously, "Beyers is requesting judgment against Brad and Brenda Stabler only for those amounts determined not to be discharged in their prior Chapter 7 bankruptcy."
>
> Debtors have offered no reasonable interpretation of this statement that would permit me to conclude Beyers is in any way attempting to collect, recover, or offset a debt discharged in debtors' bankruptcy.
>
> If Beyers recovers everything he has requested in counts three and four of the state court complaint, he will necessarily recover only those amounts determined not to be discharged in

6

> debtors' bankruptcy and Beyers' efforts to collect only those amounts cannot and do not violate the discharge injunction.
>
> And as was the case with respect to the post-discharge note described in count one of Beyers' state court counterclaim, the post-discharge notes in counts three and four of Beyers' state court counterclaim, which it bears mentioning were executed in favor of the assurers, not Beyers, cannot and do not constitute an unenforceable re-affirmation agreement, because as I indicated earlier, a re-affirmation agreement necessarily involves a pre-petition debt that would otherwise be discharged.
>
> Consequently, to the extent it relates to counts three and four of Beyers' state court counterclaim, debtors' adversary complaint fails to state a claim upon which relief can be granted.

App. 348–49.

The bankruptcy judge went on to explain, however, that while he had "effectively dispose[d]" of the adversary complaint, Appellants had also asked him to abstain from hearing the matter under § 1334(c)(1). App. 349. Analyzing the abstention factors listed in Williams v. Citifinancial Mortgage Co. (In re Williams), 256 B.R. 885 (B.A.P. 8th Cir. 2001), the bankruptcy judge reasoned that although the question of whether Beyers violated the discharge injunction was "clearly a matter of federal bankruptcy law," the issue of whether the debt in the counterclaim was discharged involved state law because Brad and Brenda were claiming Beyers defrauded them into agreeing to pay that debt. App. 351–52. Because the state court had concurrent jurisdiction to decide whether the debt in counts 3 and 4 of the counterclaim had been discharged, the bankruptcy judge concluded that the best approach was to defer to the state court to decide the question and to allow Brad and Brenda to return to bankruptcy court if necessary:

> I believe it would be possible, even preferable, to sever debtors' state court claims, allow the state court to determine, as it already has with respect to count one of Beyers' state court counterclaim, whether any of the debts Beyers is seeking to collect have been discharged. And if the state court determines, albeit contrary to the express language of counts three and four of Beyers' state court counterclaim, any of those debts have been discharged, allow debtors to renew their complaint. That is not an ideal solution, but

7

> it's better than having the parties battling. And I use that word
> advisedly, simultaneously on two fronts. And it's better than
> having two courts racing to decide whether Beyers acted
> fraudulently.

App. 352–53. Thus, the bankruptcy judge decided to abstain from hearing the proceeding "[a]s
an alternative grounds for dismissing debtors' complaint." App. 354. The bankruptcy judge
entered a text order stating: "DISPOSITION: Based on the findings and conclusions entered on
the record, Debtors-Plaintiffs' Complaint (doc. 1) is dismissed, and this adversary proceeding
shall be closed. The other pending motions are rendered moot." App. 699.

Brad and Brenda appealed the bankruptcy judge's dismissal of their adversary complaint.
The BAP affirmed the decision to abstain without ruling on the dismissal for failure to state a
claim. In re Stabler, 418 B.R. at 766 n.2, 769–71.

Appellants and the Stablers continued to litigate in state court. In 2011, the state judge
granted Brad and Brenda summary judgment on counts 3 and 4 of Beyers's counterclaim. App.
13, 473. The state judge found that Brad and Brenda actually owed FSBR $608,124.55 when
they filed for bankruptcy,[4] that the $650,000 promissory note was a "reaffirmation of personal
liability for debt that was discharged in their bankruptcy," and that this reaffirmation was
unenforceable against Brad and Brenda because it had never been filed with the bankruptcy
court. App. 6, 13–15. The fact that Beyers had received his interest in the $650,000 note from
third parties did not change the state judge's conclusions. App. 13–15. According to the state
judge, Beyers had "concocted a transaction" where third parties (Schurrs and Ernst) would take
promissory notes from Brad and Brenda for the purpose of recreating personal liability for Brad
and Brenda on discharged debt. App. 13–15. The state judge described conduct that

---

[4] In Brad and Brenda's bankruptcy petition, their attorney Rob Ronayne mistakenly listed FSBR
as having a claim for only $225,816.36.

demonstrated a lack of good faith and an intent to evade the discharge injunction. App. 13–15. Thereafter, the state court reversed its earlier decision to grant Beyers summary judgment on count 1 of his counterclaim because it found that there was an issue of fact concerning whether Beyers could enforce the Ipswich State Bank loan against Brad and Brenda. App. 474.

A trial was scheduled on several of the parties' remaining state-court claims. At the pretrial hearing, Brad and Brenda dropped their fraud claim and elected to pursue rescission of the $650,000 promissory note.[5]  App. 431–33, 475.  This left for a jury trial Stan and Rose's claim that Appellants had fraudulently induced them to sign the $650,000 promissory note. App. 475. Part of Stan and Rose's theory of fraud was that Beyers had misrepresented that Brad owed a large portion of the debt underlying the $650,000 note, when that debt had actually been discharged in bankruptcy and not properly reaffirmed. App. 475–76, 488; Stabler, 865 N.W.2d at 473. At trial, the state judge gave a jury instruction explaining the requirements for a valid reaffirmation agreement and stating that there was a split in authority concerning when a reaffirmation agreement was necessary:

> At the time the note and mortgage were signed, there were courts that had ruled both ways on whether a reaffirmation agreement to pay discharged debt was needed when the lender agreed not to foreclose on the borrower, in exchange for the borrower's promise to pay.  At the time the note and mortgage were signed, there were no binding court decisions in South Dakota on the issue.

App. 488.  The jury returned a special verdict finding that $439,100.00 of the $650,000 promissory note was obtained by fraud.  App. 485.

---

[5]Brad and Brenda's attorney acknowledged at the pretrial hearing that because they were not presenting a fraud claim to the jury, Brad and Brenda would not have a claim in state court for punitive damages. App. 432. At the same hearing, Brad and Brenda's attorney said they were withdrawing their claim for attorney's fees because he thought that was an issue for the bankruptcy court to decide. App. 433. Appellants claim that Brad and Brenda "waived" their claims for attorney's fees, but in reality Brad and Brenda were affirmatively indicating an intention to pursue this issue before the bankruptcy court as they ultimately did.

Thereafter, the state judge held a court trial concerning Brad and Brenda's rescission claim and whether Beyers could recover on the Ipswich State Bank loan. App. 456–66; 477. In a July 2013 opinion, the state judge summarized the facts of the case as follows:

> The opposing parties could not have viewed the case more differently. According to the Stablers, John Beyers and FSBR intentionally engaged in a course of conduct intended to collect money that was no longer owed by Brad and Brenda Stabler and to defraud Stan and Rose Marie Stabler into securing that nonexistent debt with their own assets. Beyers and FSBR attempted to paint an entirely different picture. Their version of the case portrayed John Beyers as a beneficent owner of a well-intentioned, small town bank who was simply trying to help to prevent Brad and Brenda Stabler from losing their farm. His actions, both personally and as a representative of FSBR, were portrayed as altruistic.
>
> The jury rejected the theory of the case presented by Beyers and FSBR. After viewing the same evidence as the jury, I also reject their depiction of the events and motivations. Based on all of the evidence presented at the jury trial and the court trial, these are the facts as I find them to have occurred in this case. Each time a fact is stated in this opinion, it has been found by this Court to have been established by a preponderance of the evidence.
>
> Brad and Brenda Stabler had a small family farm which they funded through loans from FSBR. Brad Stabler decided to start a crop spraying business, known as [ECAS]. ECAS was also funded through loans from FSBR. Brad Stabler personally guaranteed the ECAS loans. The ECAS building was built on land owned by Stan and Rose Marie Stabler. Naturally, FSBR asked that the ECAS building loan would be secured by the property upon which it was located. Stan and Rose Marie agreed to this request. Accordingly, FSBR had a security interest up to the value of that loan (approximately $110,000) against a quarter section parcel of Stan and Rose Marie's farm.
>
> Things did not go well with ECAS. ECAS was being sued by various parties. John Beyers assessed the situation and realized that ECAS was doomed. More importantly, John Beyers realized that if the litigation was allowed to proceed, those other parties were going to obtain judgments against ECAS. Beyers realized that ECAS did not have sufficient assets to cover all of its liabilities and was essentially bankrupt. Being an astute and experienced businessman, Beyers saw the natural progression. Unless he took action, ECAS eventually would be forced into bankruptcy. He realized that FSBR was under-secured on the loans to Brad and Brenda Stabler and ECAS. In order to protect

FSBR's interests, Beyer[s] arranged for Brad and Brenda Stabler to meet with Attorney Rob Ronayne about filing for bankruptcy.

The evidence establishes that this bankruptcy was not Brad or Brenda's idea. This idea was solely that of John Beyers. John Beyers decided that Brad and Brenda Stabler should file bankruptcy. John Beyers personally decided who Brad and Brenda Stabler should use as their bankruptcy attorney—Rob Ronayne. Rob Ronayne is an experienced bankruptcy attorney. Rob Ronayne also regularly served as an attorney for FSBR. John Beyers also knew this. John Beyers convinced Brad and Brenda Stabler that he was acting in their best interests. He was not and knew it. I find and conclude that John Beyers' intention was to protect the financial interests of FSBR.

John Beyers owns FSBR. John Beyers knew that if the lawsuits were allowed to proceed, ECAS and Brad and Brenda Stabler would eventually end up filing for bankruptcy. By maintaining their trust, encouraging them to file bankruptcy, and selecting their bankruptcy attorney, Beyers believed that he could control the situation so that the debts to the other creditors could be discharged while the obligations to FSBR could be maintained or reassumed. Over the course of the next year, this is exactly what John Beyers and FSBR accomplished.

Brad and Brenda Stabler filed for and received discharge from bankruptcy court. The discharge eliminated Brad's personal guarantee of the ECAS debt. FSBR still held security interests in Brad and Brenda Stabler's farm and machinery because such secured interests are not discharged by bankruptcy. FSBR still held a security interest worth approximately $110,000 over a quarter section parcel of land owned by Stan and Rose Marie Stabler. FSBR could have foreclosed on that quarter of land to recover on that debt. FSBR could have foreclosed on Brad and Brenda's land and other secured property. This course of action would have resulted in a significant shortfall for FSBR. FSBR would have recovered some money but would have taken a significant loss on the various loans of Brad and Brenda and ECAS. More importantly, FSBR would have had no further recourse against any of the Stablers. John Beyers understood this.

Instead of accepting such a loss, John Beyers devised a scheme through which he would convince Brad and Brenda Stabler to continue paying on their discharged debt. Alone, this would be practically useless because Brad and Brenda clearly did not have the resources to service the reaffirmed debt. It was only a matter of time before they would default. John Beyers' scheme included a plan to improve FSBR's security interests by convincing Stan and Rose Marie to sign increasingly larger mortgages to their entire farm in order to secure the debt of Brad and Brenda. This is

> exactly what transpired. As found by the jury and by this Court,
> $431,900[6] of the value of those mortgages was obtained by fraud
> on the part of John Beyers and FSBR.

App. 456–58 (footnotes omitted). In a footnote, the state court judge explained that evidence at

trial supported his earlier determination that the $650,000 promissory note was an invalid

reaffirmation agreement:

> The evidence establishes that the purported reaffirmations with
> FSBR were not knowingly and consensually accepted by Brad and
> Brenda. Instead, the evidence establishes that they were the result
> of coercive behavior by John Beyers on behalf of FSBR. It was
> clear to Brad and Brenda that if they did not reaffirm the debt that
> FSBR would foreclose on their property and, more importantly, the
> property of Stan and Rose Marie. All of this was done without the
> consent or supervision of the bankruptcy court. This type of
> behavior is exactly what the "reaffirmation process" is intended to
> protect against. The evidence establishes that based on the
> financial circumstances of Brad and Brenda, it was not in their best
> interests to reaffirm that debt or forestall the foreclosure of FSBR's
> secured interests. After hearing all of the evidence, I am firmly
> convinced that no bankruptcy judge would have ever concluded
> that it was in Brad and Brenda's best interest to allow them to
> reaffirm the discharged debt.

App. 458. The state judge concluded that Brad and Brenda were entitled to $142,908.27 based

on their rescission of the $650,000 promissory note. App. 465. Although noting that Beyers's

behavior surrounding the Ipswich State Bank loan was improper,[7] the state judge concluded that

Beyers could still enforce that loan against Brad and Brenda. App. 459–61.

Both sides appealed the state court's judgment to the Supreme Court of South Dakota.

Stabler, 865 N.W.2d at 469. Appellants argued that the state court should have granted them

summary judgment on Stan and Rose's fraud claim because any misrepresentation Beyers made

---

[6]The state judge appears to have transposed the "1" and the "9" in this amount. The jury actually found that $439,100 of the $650,000 promissory note was obtained by fraud. App. 476, 485.
[7]The state judge found that Beyers had lied to Ipswich State Bank about Brad and Brenda's financial condition and then manipulated their repayment of the loan to minimize the amount he would ultimately need to repay Ipswich State Bank as guarantor of the loan. App. 459.

that Brad owed some of the debt underlying the $650,000 promissory note was a legal, rather than a factual, misrepresentation. Id. at 477 (explaining that a fraud claim cannot be based on "a misrepresentation as to what the law would allow or require" (citation omitted)). According to Beyers, a split in authority on reaffirmation agreements established that his representations were ones of law. Id. at 478. The Supreme Court of South Dakota rejected this argument, finding that the law was not "so unclear as to render [Beyers and FSBR] unaware" that 11 U.S.C. § 524(c) would apply under the facts of the case. Stabler, 865 N.W.2d at 478. The Supreme Court of South Dakota also distinguished DuBois v. Ford Motor Credit Co., 276 F.3d 1019 (8th Cir. 2002), the main case Beyers cited to support his argument that § 524(c) did not apply to the $650,000 promissory note. Stabler, 865 N.W.2d at 478. The Supreme Court of South Dakota explained that unlike Dubois, where the debtors approached the creditor themselves and voluntarily agreed to pay a discharged debt, Appellants had "pressured Plaintiffs into signing the loan documents, repeatedly seeking them out to sign numerous notes and mortgage additional property in an attempt to reaffirm the discharged debt." Stabler, 865 N.W.2d at 478. Given these facts, the Supreme Court of South Dakota concluded that the Stablers' agreement to pay discharged debt was not voluntary. Id. at 478–79.

In December 2015, Brad and Brenda filed a motion in bankruptcy court asking the judge to find Appellants in contempt for violating the discharge injunction. App. 01–04. Brad and Brenda explained that the state judge had now found that the $650,000 promissory note represented discharged debt and argued that Appellants violated the discharge injunction by suing them for this debt in state court. App. 02–03. The brief in support of the motion provided additional reasons and references to state court evidence about Beyer's scheme to collect the discharged debt. BR Docs. 31, 31-2, 37, 37-1, 37-2. Beyers and FSB objected, claiming that the

bankruptcy court's earlier decision precluded the motion for contempt and arguing that they had a good faith belief that the $650,000 note was enforceable. BR Doc. 35, 35-1.

The bankruptcy judge issued an oral order in June 2016 granting Brad and Brenda's motion for contempt. App. 533–62. The bankruptcy judge began by stating that Appellants' issue preclusion argument misconstrued his 2009 order dismissing the adversary complaint. In the 2009 order, the bankruptcy judge explained, he had abstained from deciding whether Beyers was attempting to collect discharged debt but had invited Brad and Brenda to renew their request for sanctions should the state judge decide in their favor. App. 541. Although the bankruptcy judge acknowledged that he had also dismissed the complaint for failure to state a claim, he reasoned that he could not "both abstain from hearing a matter and grant relief with respect to that matter." App. 541. The bankruptcy judge further explained that even if he could have granted FSBR and Beyers relief, "the landscape has changed significantly since I dismissed Debtor's earlier complaint." App. 542. Specifically, the "prophylactic" language[8] in counts 3 and 4 of the counterclaim "could no longer be given any weight" after "the state court's finding that the entire debt was discharged and there were no amounts determined not to be discharged in [Brad and Brenda's] prior Chapter 7 bankruptcy." App. 542–43.

Next, the bankruptcy judge found that FSBR and Beyers willfully violated the discharge injunction by coercing the Stablers into signing the new promissory notes and pursuing collection of the discharged debt. App. 543–62. Relying on factual findings in the state court's July 2013 order, the bankruptcy judge rejected Beyers's claim of good faith, stating:

> Nothing in the state court's findings suggest either Bank or Beyers
> was ever acting in good faith in their post-discharge dealings with

---

[8]The prophylactic language referenced is the confining of the request for judgment on counts 3 and 4 of the counterclaim to "only . . . those amounts determined not to be discharged in [the Stablers'] prior Chapter 7 bankruptcy." App. 507–08, 521.

> Debtors. If Bank and Beyers truly believed in good faith the debt
> was enforceable, there would have been no need for a scheme or
> coercive behavior. Instead of the shell game the state court
> described, a single new promissory note and a single new
> mortgage would have sufficed. A timely filed reaffirmation
> agreement would have been even better.

App. 548–49.

The bankruptcy judge concluded by holding Appellants in contempt for violating the

discharge injunction. He awarded Brad and Brenda $159,605.77 in attorney's fees and ordered

that Beyers and FSBR each pay $25,000 in punitive damages.[9] App. 563. Beyers and FSBR do

not challenge the amount of either attorney's fees or the punitive damages award, but contend

that issue preclusion principles and the circumstances render such awards invalid and improper.

## II.   Analysis

Appellants argue that issue preclusion and the law of the case doctrine barred the

bankruptcy judge from considering Brad and Brenda's motion for contempt. They also contend

that the bankruptcy judge should have denied the motion on its merits. This Court addresses

each of Appellants' arguments in turn.

### A.   Issue Preclusion

The bankruptcy judge's refusal to apply issue preclusion presents a legal question that

this Court reviews de novo. Sells v. Porter (In re Porter), 375 B.R. 822, 826 (B.A.P. 8th Cir.

2007). Because this Court is considering the preclusive effect of the bankruptcy court's

dismissal of the adversary complaint, it applies the federal common law of issue preclusion.

Covert v. LVNV Funding, LLC, 779 F.3d 242, 245 (4th Cir. 2015) ("Federal law governs the res

judicata effect of earlier bankruptcy proceedings.").

---

[9] In explaining the punitive damages award, the bankruptcy judge said that he was "appalled" by
the actions of Beyers and FSBR and that their motive "was pure and unadulterated greed." App.
560–61.

Issue preclusion, sometimes called collateral estoppel, "refers to the effect of a judgment in foreclosing relitigation of a matter that has been litigated and decided." Migra v. Warren City Sch. Dist. Bd. of Educ., 465 U.S. 75, 77 n.1 (1984). There are five elements to issue preclusion:

> (1) the party sought to be precluded in the second suit must have been a party, or in privity with a party, to the original lawsuit; (2) the issue sought to be precluded must be the same as the issue involved in the prior action; (3) the issue sought to be precluded must have been actually litigated in the prior action; (4) the issue sought to be precluded must have been determined by a valid and final judgment; and (5) the determination in the prior action must have been essential to the prior judgment.

Sandy Lake Band of Miss. Chippewa v. United States, 714 F.3d 1098, 1102–03 (8th Cir. 2013) (quoting Robinette v. Jones, 476 F.3d 585, 589 (8th Cir. 2007)).

Appellants argue first that issue preclusion applies to the bankruptcy judge's 2009 decision that Brad and Brenda had failed to state a claim. As the Eighth Circuit recognized nearly twenty-five years ago, "[t]he general rule is that, 'if a judgment is appealed, [issue preclusion] only works as to those issues specifically passed upon by the appellate court.'" Mandich v. Watters, 970 F.2d 462, 465 (8th Cir. 1992) (quoting Hicks v. Quaker Oats Co., 662 F.2d 1158, 1168 (5th Cir. 1981)). The rationale for this rule is that a "full and fair opportunity to litigate" an issue includes having an appellate court determine whether the issue was accurately decided. Id. (quoting Gray v. Lacke, 885 F.2d 399, 406 (7th Cir. 1989)); see also Dow Chem. v. U.S. E.P.A., 832 F.2d 319, 323 n.25 (5th Cir. 1987) (explaining that "[t]he rule responds to the fear that an appellate court's choice of grounds may arbitrarily and unfairly preclude any review of alternative grounds reached by the district court"); Janicki Logging Co. v. United States, 36 Fed. Cl. 338, 340–41 (Fed. Cl. 1996) ("This approach to issue preclusion makes eminent sense. Our legal system generally allows litigants the opportunity to secure appellate review of adverse trial court judgments. Defendant's approach would undermine this right by binding a litigant to a

16

trial court's determination of an issue on which the litigant did not have an opportunity to secure appellate resolution."). The First and Second Restatements of Judgments, a leading treatise on civil procedure, and the majority of the federal courts of appeals agree that if an appellate court affirms on one ground but passes over another, issue preclusion does not attach to the ground the appellate court refused to consider. Yingbin-Nature (Guangdong) Wood Indus. Co. v. Int'l Trade Comm'n, 535 F.3d 1322, 1334 n.4 (Fed. Cir. 2008); Niagara Mohawk Power Corp. v. Tonawanda Band of Seneca Indians, 94 F.3d 747, 754 (2d Cir. 1996); Borst v. Chevron Corp., 36 F.3d 1308, 1314 n.11 (5th Cir. 1994); Ash Creek Mining Co. v. Lujan, 969 F.2d 868, 872–73 (10th Cir. 1992); Gray, 885 F.2d at 406–07; Synanon Church v. United States, 820 F.2d 421, 424–25 (D.C. Cir. 1987); Hill v. Watts, 803 F.2d 713 (4th Cir. 1986) (per curiam); Restatement (Second) of Judgments § 27 cmt. o (Am. Law Inst. 1982); Restatement (First) of Judgments § 69 cmt. b (Am. Law Inst. 1942); 18 Charles Alan Wright et al., Federal Practice and Procedure §§ 4421, 4432 (3d ed.). Here, of course, the BAP on appeal affirmed on abstention grounds and did not address whether the bankruptcy court should have dismissed the adversary complaint filed in 2009. In re Stabler, 418 B.R. at 766 n.2, 769–71. Under the general rule, issue preclusion does not attach.

Beyers, however, argues that the rule in the Eighth Circuit is that a holding not addressed on appeal is still entitled to preclusive effect. Beyers bases this argument on Tudor Oaks Limited Partnership v. Cochrane (In re Cochrane), 124 F.3d 978 (8th Cir. 1997), a complicated case that ultimately is distinguishable. The issue in Cochrane was whether a particular Minnesota state court judgment against a lawyer was dischargeable in bankruptcy. A limited partnership had sued the lawyer in 1987 for breach of fiduciary duty. Id. at 980. In 1992, a Minnesota jury found in the limited partnership's favor and awarded it millions of dollars in

damages. Id. The Minnesota Court of Appeals affirmed the breach of fiduciary duty finding, but remanded the case to the trial court with instructions to reduce the damages. Id. After the trial court entered final judgment, the lawyer filed a new action in state court seeking to have the judgment set aside. Id. He argued for the first time that the limited partnership's dissolution during the first state court action deprived the trial court of jurisdiction and that the judgment was obtained by fraud because the dissolution had not been disclosed. Id. The trial court disagreed, finding that the lawyer had waived his capacity-to-sue defense by failing to raise it during the first action and that his fraud argument failed as a matter of law. Id. The Minnesota Court of Appeals affirmed the dismissal of the lawyer's suit, holding that the lawyer had waived his capacity-to-sue and fraud arguments by failing to raise them until after the entry of final judgment in the first action. Id. at 980–81; Cochrane v. Tudor Oaks Condo. Project, 529 N.W.2d 429, 432, 435–36 (Minn. Ct. App. 1995). It reasoned that the limited partnership's dissolution had long been public knowledge and that the "protracted nature" of the litigation gave the lawyer ample time to raise his arguments. Cochrane, 124 F.3d at 980–81; Tudor Oaks, 529 N.W.2d at 435–36. In the meantime, the limited partnership filed an adversary proceeding in the lawyer's bankruptcy case seeking a declaration that the state court judgment was not dischargeable. Cochrane, 124 F.3d at 981. The bankruptcy court gave preclusive effect to the jury's finding that the lawyer breached a fiduciary duty and therefore held that the state judgment was not dischargeable. Id. at 981. In 1996, almost ten years after the partnership had sued the lawyer in state court, the lawyer appealed the bankruptcy court's decision to the Eighth Circuit. Among other things, the lawyer argued that there had never been any finding concerning whether the state court judgment had been obtained by fraud. Id. at 983. The Eighth Circuit disagreed, holding that the lawyer was bound by the state court's decision that no fraud occurred. Id.

18

Although the Eighth Circuit recognized that the Minnesota Court of Appeals had affirmed "solely" on a waiver theory, it held that the state court's fraud findings in the lawyer's action "were final for purposes of applying the doctrine of collateral estoppel because that litigation had reached such a stage that, in our view, there is 'no really good reason for permitting [those issues] to be litigated again.'" Id. at 983 (alteration in original) (quoting John Morrell & Co. v. Local Union 304A of United Food & Commercial Workers, 913 F.2d 544, 563–64 (8th Cir. 1990)).

Cochrane is not the only case in the Eighth Circuit considering whether issue preclusion should apply to a holding unaddressed on appeal. Eleven years after Cochrane, in Fairbrook Leasing, Inc. v. Mesaba Aviation, Inc., 519 F.3d 421 (8th Cir. 2008), the Eighth Circuit refused to give preclusive effect to a district court's alternative holding that the Eighth Circuit had passed over in an earlier appeal. Id. at 428. In the first action in Fairbrook, the district court had ruled alternatively that a document executed by the parties was a "Type I" and a "Type II" agreement under New York law. Id. at 427. The Eighth Circuit affirmed the district court's decision that the document was a Type II agreement without addressing the alternative holding that the document was a Type I agreement. Id. at 428. Thereafter, one of the parties started a new action in federal court seeking damages that were only available under a Type I agreement. In its reasoning, the Eighth Circuit relied on Comment o of the Restatement (Second) of Judgments, which states in relevant part:

> If the appellate court upholds one of [a lower court's alternative] determinations as sufficient but not the other, and accordingly affirms the judgment, the judgment is conclusive as to the first determination.
> If the appellate court upholds one of these determinations as sufficient and refuses to consider whether or not the other is sufficient and accordingly affirms the judgment, the judgment is conclusive as to the first determination.

19

Restatement (Second) of Judgments § 27 cmt. o (Am. Law Inst. 1982). The Eighth Circuit then held that "basic principles of issue preclusion bar [the party] from relying on the district court's alternative ruling that the [document] was a Type I agreement because that ruling was not upheld on appeal."[10] Fairbrook, 579 F.3d at 428.

Contrary to Appellants' suggestion, Cochrane does not establish a rule in the Eighth Circuit that issue preclusion always applies to alternative decisions unaddressed on appeal. The facts in Cochrane were unique: by the time the lawyer's bankruptcy decision reached the Eighth Circuit, there had been a jury verdict awarding damages for the lawyer's breach of fiduciary duty; an appellate decision affirming the jury's breach of fiduciary duty finding; entry of final judgment by the trial court; a trial court summary judgment decision holding that the lawyer had waived his capacity to sue defense and that his fraud claims failed as a matter of law; and an appellate decision holding that the lawyer had waived his fraud and capacity-to-sue arguments by failing to raise them before entry of final judgment. Cochrane, 124 F.3d at 980–81; Tudor Oaks, 529 N.W.2d at 432, 435–36. Thus, when the lawyer argued to the Eighth Circuit that there had never been a finding on whether the state court judgment was obtained by fraud, he was asking the Eighth Circuit to preclude the limited partnership from collecting on a judgment that had been years in the making and that had previously withstood an untimely fraud argument rejected as a matter of law by a trial court and rejected on waiver grounds by an appellate court. Under these circumstances, the Eighth Circuit had ample justification to hold that the trial court's

---

[10]Wright and Miller's treatise on civil procedure states: "If the appellate court terminates the case by final rulings as to some matters only, preclusion is limited to the matters actually resolved by the appellate court, whether it terminated the case on terms that left it unnecessary to resolve other matters or affirmed on some grounds and vacated or reversed on others." Wright et al., supra § 4432 (footnote omitted). Wright and Miller cite Fairbrook as an illustration of when a court terminates a case on terms that leave it unnecessary to resolve other matters. Id. § 4432 n.24.

fraud-related findings were final "because that litigation had reached such a stage that . . . there [was] 'no really good reason for permitting [those issues] to be litigated again.'" Cochrane, 124 F.3d at 983 (second alteration in orginal) (quoting John Morrell, 913 F.2d at 563–64). The Eighth Circuit's decision in Cochrane contained no discussion of the general rule that issue preclusion only attaches to issues specifically addressed on appeal. And the Eighth Circuit did not mention Cochrane in the subsequent Fairbrook decision, which it presumably would have done if Cochrane in fact established that issue preclusion always applies to alternative decisions unaddressed on appeal.

The strong justifications for applying issue preclusion in Cochrane are absent here. First, when the bankruptcy judge initially ruled that Brad and Brenda had failed to state a claim concerning counts 3 and 4 of the counterclaim, he focused on the language of the counterclaims rather than the facts surrounding the $650,000 note. App. 348–49. Later in the ruling, however, when discussing the decision to abstain, the bankruptcy judge acknowledged that because Brad and Brenda were arguing that some of their post-petition transactions with Beyers were fraudulent, determining whether Beyers violated the discharge injunction might involve more than simply looking at the language of the counterclaim. App. 352–53. The bankruptcy judge in his abstention ruling stated that "if the state court determines, albeit contrary to the express language of counts three and four of Beyers's state court counterclaim, any of those debts have been discharged, [the bankruptcy judge would] allow the debtors to renew their complaint." App. 352–53. Brad and Brenda then returned to state court, where the state judge found that as to Brad and Brenda, the $650,000 note refinanced discharged debt; that Beyers had "devised a scheme through which he would convince Brad and Brenda . . . to continue paying on their discharged debt;" and that Brad and Brenda's "purported reaffirmations with" FSBR "were the

result of coercive behavior by" Beyers. App. 13, 458. These findings—some of which the state judge made after wading through the numerous financial transactions between FSBR, Beyers, and the Stablers,[11] and some of which he made after conducting separate jury and court trials—provided the bankruptcy judge with a more complete picture of Beyers's conduct and changed the nature of the case. Thus, unlike Cochrane, where the lawyer's fraud argument and the facts and legal findings surrounding it remained unchanged, there was "good reason" to allow Brad and Brenda to present anew to the bankruptcy judge whether Beyers violated the discharge injunction and should therefore be held in contempt. Second, the appellate court in Cochrane considered the trial court's fraud findings at least indirectly when it held that the lawyer waived his right to argue fraud based on the limited partnership's dissolution. Tudor Oaks, 529 N.W.2d at 432, 435–36. Here, the BAP affirmed on abstention grounds without addressing the bankruptcy judge's alternative holding at all. Finally, Brad and Brenda asserted their claim in a timely manner, unlike the lawyer in Cochrane.

Because Cochrane is distinguishable and does not require courts to always afford preclusive effect to issues unaddressed on appeal, this Court will apply the general rule like the Eighth Circuit did in Fairbrook. Under the general rule, the bankruptcy judge's alternative holding that Brad and Brenda failed to state a claim is not entitled to preclusive effect because the BAP declined to consider it on appeal and affirmed on abstention grounds only.

Even if the general rule did not apply, this Court would still affirm the bankruptcy judge's refusal to apply issue preclusion. When, as here, "a first decision is supported both by findings that deny the power of the court to decide the case on the merits and by findings that go

_____

[11]In his opinion concluding that the $650,000 note was an invalid reaffirmation of discharged debt, the state judge stated: "Attempting to deduce the true state of affairs [between Beyers, FSBR, and the Stablers] is nearly maddening. I have literally spent weeks poring over these documents trying to reach a full understanding of the circumstances." App. 14.

to the merits, preclusion is inappropriate as to the findings on the merits." Wright et al., supra, § 4421. The Sixth Circuit discussed this principle in Remus Joint Venture v. McAnally, 116 F.3d 180 (6th Cir. 1997). In Remus, a federal district court dismissed a complaint based on Burford and Pullman abstention,[12] but also found that the plaintiff had failed to establish a protected property interest in the subject of the litigation. Id. at 182–83. In a later state case, the state court applied issue preclusion to the district court's decision on the merits. Id. at 183. The Sixth Circuit explained that the state court was mistaken because when a "ruling rests on alternative grounds, at least one of which is based on the inability of the court to reach the merits, the judgment should not act as a bar in a future action." Id. at 184 n.5. Because abstention was one of the alternative grounds for the bankruptcy judge's dismissal of the adversary complaint, the other ground—failure to state a claim—is not entitled to preclusive effect.[13]

There are reasons peculiar to this case not to apply issue preclusion. The bankruptcy judge's dismissal and abstention in 2009 is akin to denying a motion for sanctions without prejudice to refiling, rather than dismissal with prejudice of a complaint. Brad and Brenda made their request in 2009 through an adversary complaint, but at oral argument recognized that they should have styled it a motion in the bankruptcy case. See Green Point Credit, LLC v. McLean

---

[12]See Burford v. Sun Oil Co., 319 U.S. 315 (1943); R.R. Comm'n of Texas v. Pullman Co., 312 U.S. 496 (1941).

[13]Relatedly, there is a line of federal case law holding that courts cannot decline to exercise supplemental jurisdiction over a claim and, at the same time, rule on the merits of the claim. Disher v. Info. Res., Inc., 873 F.2d 136, 140 (7th Cir. 1989) ("A dismissal based on the district court's relinquishing its pendent jurisdiction deprives any ruling that he may have made on the merits of a relinquished claim of preclusive effect."); Axess Int'l, Ltd. v. Intercargo Ins. Co., 183 F.3d 935, 943 (9th Cir. 1999) ("[O]nce the district court chose not to exercise supplemental jurisdiction over Axess's supplemental state law claims, it lacked the power to adjudicate the merits of these claims . . . ."). Declining to exercise supplemental jurisdiction is a bit different from deciding to abstain, but at least one bankruptcy court has explained that abstention under § 1334(c)(1) "is the relinquishment of federal jurisdiction to state courts when the conditions of the statute are satisfied." In re Alternate Fuels, Inc., No. 09-20173, 2010 WL 194660, at *2 (Bankr. D. Kan. Jan. 14, 2010).

(In re McLean), 794 F.3d 1313, 1326 (11th Cir. 2015) (explaining that civil contempt sanctions for violating the discharge injunction should be brought as a contested matter via a motion rather than as an adversary proceeding via a complaint); Chionis v. Starkus (In re Chionis), No. CC-12-1501-KuBaPa, 2013 WL 6840485, at *4 (B.A.P. 9th Cir. Dec. 27, 2013) ("[A] bankruptcy court may dismiss a complaint seeking contempt sanctions for violation of the discharge injunction and thereby require the party seeking sanctions to proceed by motion instead."). Appellants at oral argument acknowledged that whether the request was styled an adversary complaint or motion made no practical difference. The bankruptcy judge characterized his ruling as a dismissal of the adversary complaint coupled with abstention, but his ruling—where he expressly left open the possibility to "allow debtors [Brad and Brenda] to renew their complaint" if the state court determined that Beyers was seeking to collect on discharged debt—clearly signals that he did not intend the ruling to have preclusive effect. See App. 352–53. When Brad and Brenda brought their motion for contempt in 2015, they presented a broader theory of Beyers's violation of the discharge injunction. Although Brad and Brenda in their 2015 motion restated the previous grounds of counts 3 and 4 of the counterclaim as a basis for sanctions, App. 03, they presented additional reasons and bases not before or considered by the bankruptcy judge in 2009, see App. 01–03; BR Docs. 31, 31-2, 37, 37-1, 37-2. Moreover, the bankruptcy judge's decision in 2016 to award sanctions is an enforcement of his own order against a party who violated the order. Judges retain substantial discretion to enforce their orders. See Jones v. CitiMortgage, Inc., 666 F. App'x 766, 775 n.8 (11th Cir. 2016) (per curiam) (explaining that the bankruptcy court that issues the discharge injunction "is the court that alone possess[es] the power to enforce compliance with [the injunction]"); Waffenschmidt v. MacKay, 763 F.2d 711, 716 (5th Cir. 1985) ("Courts possess the inherent authority to enforce their own injunctive decrees.").

There are five required elements for issue preclusion, as set forth above. See Sandy Lake Band, 714 F.3d at 1102–03. The parties of course are the same between the 2009 adversary complaint and 2015 motion, and the issue sought to be precluded is the same. However, the issue sought to be precluded was not truly "actually litigated" in 2009; and the "valid and final judgment" element is missing because the affirmance was on abstention grounds only.

Appellants also argue that the bankruptcy judge's decision to abstain is entitled to preclusive effect. Although a decision to abstain does not bar further litigation of the underlying claims in a case, Partington v. Gedan, 961 F.2d 852, 860 (9th Cir. 1992), it can preclude further litigation of the abstention issue itself, Grieve v. Tamerin, 269 F.3d 149, 153 (2d Cir. 2001) (applying issue preclusion to a decision to abstain under Younger v. Harris, 401 U.S. 37 (1971)); CH Props., Inc. v. Comite de Vecinos de Isla Verde (In re CH Props., Inc.), 381 B.R. 20, 27–28 (D.P.R 2007) (likening abstention under § 1334(c)(1) to Younger abstention and applying issue preclusion to bankruptcy judge's decision to abstain). Here, however, the bankruptcy judge never said that he was going to permanently abstain from deciding whether Beyers violated the discharge injunction and should therefore be held in contempt. Rather, the bankruptcy judge stated in his 2009 oral order that it would be "preferable" to have the state court decide the discharge question and then allow Brad and Brenda to renew their request if necessary. App. 352–53. In his 2016 oral order, the bankruptcy judge confirmed that his 2009 oral order "invited [Brad and Brenda] to renew their request for sanctions," depending on what the state court decided. App. 541.

Although Appellants acknowledge that a bankruptcy court's interpretation of its own order is entitled to deference, Doc. 13 at 34; Gen. Elec. Capital Corp. v. Dial Bus. Forms, Inc. (In re Dial Bus. Forms, Inc.), 341 F.3d 738, 744 (8th Cir. 2003) (reviewing bankruptcy court's

interpretation of its order for abuse of discretion); Kelley v. Centennial Bank (In re Kelley), 488 B.R. 97, 99 (B.A.P. 8th Cir. 2013) (same), they argue that the bankruptcy judge abused his discretion when the judge interpreted his 2009 oral order as inviting Brad and Brenda to renew their request for sanctions. According to Appellants, this interpretation is inconsistent with the bankruptcy judge's 2009 text order dismissing the adversary complaint. Appellants contend that the text order did not contain an invitation to return; that the dismissal was presumed to be "with prejudice" or "on the merits" under Rule 41(b) of the Federal Rules of Civil Procedure and Rule 7041 of the Federal Rules of Bankruptcy Procedure; and that the language of the text order should control rather than the 2009 oral order. Appellants' argument is unconvincing. To be sure, when there is a direct conflict between an opinion and an unambiguous judgment, the judgment typically controls. See Eakin v. Cont'l Ill. Nat'l Bank & Tr. Co. of Chi., 875 F.2d 114, 118 (7th Cir. 1989) (holding that the language of the judgment controlled where the district court's opinion concluded that specific performance was appropriate but the judgment stated the defendant had to pay the full amount under letter of credit). That is not the situation here, however. The text order says nothing about Brad and Brenda being barred from returning to bankruptcy court or the bankruptcy judge permanently abstaining from deciding the contempt issue. App. 699. Nor is the text order an unqualified dismissal with prejudice, as Appellants argue. Instead, the text order says that the adversary complaint is dismissed "[b]ased on the findings and conclusions entered on the record." App. 699. The text order is ambiguous for purposes of applying issue preclusion because the order itself sheds no light on what the "findings and conclusions entered on the record" actually were. See Colonial Auto Ctr. v. Tomlin (In re Tomlin), 105 F.3d 933, 940 (4th Cir. 1997) (finding that bankruptcy dismissal order was ambiguous where the order stated that debtor's petition was dismissed with prejudice

"for the reasons set forth" in the trustee's motion); Heartland Hosp. v. Thompson, 328 F. Supp. 2d 8, 12 (D.D.C. 2004) (concluding that judgment was ambiguous where judgment remanded case to administrative agency "for action consistent with the foregoing opinion"). And when a judgment is ambiguous, courts look beyond the judgment itself to determine its preclusive effect. See Tomlin, 105 F.3d at 941 (considering bankruptcy judge's interpretation of ambiguous dismissal order); Sec. Mut. Cas. Co. v. Century Cas. Co., 621 F.2d 1062, 1066 (10th Cir. 1980) ("If there is any ambiguity or obscurity or if the judgment fails to express the rulings in the case with clarity or accuracy, reference may be had to the findings and the entire record for the purpose of determining what was decided."); see also United States v. Maull, 855 F.2d 514, 516 (8th Cir. 1988) (holding that the district court's opinion entered after it had dismissed a complaint under FRCP 41(b) "effectively clarified the ambiguity in its earlier order and 'rebutted the presumption of finality created by Rule 41(b)'" (quoting Knox v. Lichtenstein, 654 F.2d 19, 22 (8th Cir. 1981))). In sum, the rule that the judgment controls over the opinion does not apply here because the text order is ambiguous and does not directly conflict with the 2009 oral order.

Appellants offer several other reasons why the bankruptcy judge abused his discretion in interpreting his 2009 oral order, including that the main reason the bankruptcy judge declined to exercise jurisdiction over the adversary complaint was that Brad and Brenda were forum shopping and that the decision to abstain was a second, alternative ruling, made only after the bankruptcy judge decided that Beyers's counterclaim did not violate the discharge injunction. Neither these arguments nor any of Appellants' other arguments establish that the bankruptcy judge abused his discretion when he interpreted his 2009 oral order as inviting Brad and Brenda to renew their request for sanctions. As set forth above, the bankruptcy judge made the following statement in the 2009 oral order:

27

> I believe it would be possible, even preferable, to sever debtors'
> state court claims, allow the state court to determine, as it already
> has with respect to count one of Beyers' state court counterclaim,
> whether any of the debts Beyers is seeking to collect have been
> discharged. And if the state court determines, albeit contrary to the
> express language of counts three and four of Beyers' state court
> counterclaim, any of those debts have been discharged, allow
> debtors to renew their complaint.

App. 352–53. Given this language, the bankruptcy judge's interpretation of his 2009 order was

reasonable and was not an abuse of discretion. Because the 2009 order allowed Brad and Brenda

to return to bankruptcy court if the state judge decided the discharge question in their favor, the

bankruptcy judge's decision to abstain in 2009 did not bar Brad and Brenda's 2015 motion for

contempt.

### B.    Law of the Case

Appellants argue that the law of the case doctrine barred the bankruptcy judge from

considering Brad and Brenda's 2015 motion for contempt. Although Appellants argued to the

bankruptcy court that issue preclusion applied to the motion for contempt, they never made any

argument concerning the law of the case doctrine. Appellants' failure to raise the law of the case

doctrine before the bankruptcy judge constitutes a waiver of that argument and precludes them

from raising it on appeal to this Court. See Dapec, Inc. v. Small Bus. Admin. (In re MBA

Poultry, LLC, 291 F.3d 528, 534 n.3 (8th Cir. 2002) (holding that party waived argument by

failing to raise it in bankruptcy court); First Bank Inv'rs' Tr. v. Tarkio Coll., 129 F.3d 471, 477

(8th Cir. 1997) ("As a general rule, we will not consider issues not presented to the bankruptcy

court in the first instance.").

Even if Appellants had not waived their law of the case argument, it is meritless. The

law of the case doctrine "provides that when a court decides a rule of law, that decision should

govern the same issues in subsequent stages in the same case." UniGroup v. Winokur, 45 F.3d

1208, 1211 (8th Cir. 1995). The purpose of the doctrine is to protect the parties' settled expectations, ensure the uniformity of decisions, and promote judicial efficiency. First Union Nat'l Bank v. Pictet Overseas Tr. Corp., 477 F.3d 616, 620 (8th Cir. 2007). The doctrine "is a matter of practice and discretion, not a limit on power." Wright et al., supra, § 4478; see also Musacchio v. United States, 136 S. Ct. 709, 716 (2016) ("The doctrine 'expresses the practice of courts generally to refuse to reopen what has been decided,' but it does not 'limit [courts'] power.'" (alteration in original) (quoting Messenger v. Anderson, 225 U.S. 436, 444 (1912))); Little Earth of the United Tribes, Inc. v. U.S. Dep't of Hous. & Urban Dev., 807 F.2d 1433, 1440 (8th Cir. 1986) ("Law of the case is a doctrine of discretion, not a command to the courts.").

Appellants argue that the law of the case doctrine applies to the bankruptcy judge's decision that counts 3 and 4 of the counterclaim did not violate the discharge injunction. They contend that this decision created a reasonable expectation that they would not be held in contempt for violating the discharge injunction. Whatever expectation the bankruptcy judge's decision created, it does not justify applying the law of the case doctrine. Although the bankruptcy judge stated in his 2009 oral order that counts 3 and 4 of the counterclaim did not violate the discharge injunction, he also ruled both that the state court should decide whether the debt Beyers sought to collect had been discharged in bankruptcy and that Brad and Brenda could renew their complaint if they obtained a favorable ruling on the discharge question. App. 352–53. The bankruptcy judge's statement that Brad and Brenda could renew their complaint provided sufficient notice to Appellants that the contempt issue was not permanently settled. Moreover, while the bankruptcy judge's 2009 decision focused only on the language of Beyers's counterclaim, the judge's 2016 order finding Beyers in contempt went beyond this language and was based on other facts and circumstances. The bankruptcy judge recited the state judge's

findings concerning Beyers's conduct—that Beyers had devised a scheme to convince Brad and Brenda to continue paying on discharged debt and had coerced them into signing new promissory notes—before stating "I find Bank's actions in coercing debtors to sign the new promissory notes and Beyers's actions in pursuing collection of the discharged debt to be willful violations of the court's discharge order." App. 549. The 2009 decision concerning counts 3 and 4 of the counterclaim did not give Beyers license to use those state claims to seek to collect discharged debt or insulate Beyers from being held in contempt for prior conduct in scheming and coercing the Stablers to sign notes for discharged debts. At bottom, the bankruptcy judge's 2009 order did not give rise to the sort of settled expectation that the law of the case doctrine is designed to protect.

Applying the law of the case doctrine also would not advance the doctrine's other purposes. First, because the bankruptcy judge decided to abstain and invited Brad and Brenda to renew their complaint if necessary, it would be inconsistent to hold that the 2009 oral order permanently settled the question of whether Appellants violated the discharge injunction. Second, applying the law of the case doctrine would not have conserved many judicial resources. When Brad and Brenda filed their adversary complaint, the discharge question was already being litigated in state court. Waiting until the state litigation concluded to decide whether Appellants violated the discharge injunction was the most efficient course because it allowed the bankruptcy judge to rely on the state judge's findings.

### C.   Merits of the Motion for Contempt

Appellants argue that the bankruptcy judge erred when he concluded that they violated the discharge injunction in 11 U.S.C. § 524(a)(2). This Court reviews the bankruptcy judge's decision to award sanctions for a violation of the discharge injunction for an abuse of discretion,

considering the bankruptcy judge's legal conclusions de novo and his factual findings for clear error. Venture Bank, 800 F.3d at 443; Mo. Dep't of Soc. Servs. v. Spencer (In re Spencer), 550 B.R. 766, 769 (B.A.P. 8th Cir. 2016). Under § 524(a)(2), a discharge like the one Brad and Brenda received "operates as an injunction against the commencement or continuation of an action, the employment of process, or an act to collect, recover or offset any such debt as a personal liability of the debtor, whether or not discharge of such debt is waived." 11 U.S.C. § 524(a)(2). By its terms then, the discharge injunction prohibits not only lawsuits, but also any other act to collect a discharged debt from the debtor. In re McLean, 794 F.3d at 1320; Poindexter v. Sw. Mo. Bank (In re Poindexter), 376 B.R. 732, 736 (Bankr. W.D. Mo. 2007). Indeed, the discharge injunction is designed "to ensure that once a debt is discharged, the debtor will not be pressured in any way to repay it." Everly v. 4745 Second Ave., Ltd., 346 B.R. 791, 795 (B.A.P. 8th Cir. 2006) (citation and internal quotation marks omitted). A bankruptcy court may hold a creditor in contempt and impose sanctions if the creditor willfully violates the discharge injunction. In re McLean, 794 F.3d at 1319; In re Lang, 398 B.R. 1, 3 (Bankr. N.D. Iowa 2008). As the moving parties, Brad and Brenda have "the burden to show by clear and convincing evidence that [Appellants] had knowledge of the discharge and willfully violated it by pursuing collection activities." In re Lang, 398 B.R. at 3; see also Poindexter, 376 B.R. at 738 ("The standard of willfulness . . . requires evidence the offending creditor knew of the existence of the discharge order and intentionally took actions which violated its provisions.").

Appellants do not dispute that they knew of the discharge order in Brad and Brenda's bankruptcy case. Instead, Appellants argue that under the decision in Everly, 346 B.R. 791, they did not willfully violate the discharge injunction because they had a good faith basis for believing that Brad and Brenda owed the debt underlying the $650,000 note. The issue in Everly

was whether a company violated the discharge injunction by suing the debtor in state court for damages the debtor caused the company when he burglarized a club and started it on fire. Id. at 793. The debtor in Everly had received a discharge in bankruptcy but had failed to properly list the company as a creditor. Id. at 793–94, 797. Section 523(a)(3) of the Bankruptcy Code excepts certain debts from discharge if the debtor fails to list or schedule the creditor in time for the creditor to file a complaint in bankruptcy court. Everly, 346 B.R. at 795–96. The company, who at that time was unaware of the debtor's discharge, sued the debtor in state court for damages the debtor caused when he burned the club. Id. at 794. The debtor moved for sanctions in the bankruptcy court, arguing that the company had violated the discharge injunction. Id. The bankruptcy court denied the motion and the Eighth Circuit BAP affirmed. The BAP explained "that as long as a creditor has a good faith basis for believing that its debt was excepted from discharge or, as in this case, had no knowledge of any such discharge, the creditor is not subject to sanctions for violating the discharge injunction when it proceeds in state court." Id. at 797–98.

Appellants argue that they had a good faith belief that Brad and Brenda owed the debt underlying the $650,000 promissory note because at the time Beyers filed his counterclaim, there was a split in authority concerning whether the requirements in § 524(c) apply when a debtor agrees to pay discharged debt in exchange for a creditor's promise not to foreclose on liens that had passed through the debtor's bankruptcy. The requirements for reaffirmations in § 524(c) apply to any agreements "between a holder of a claim and the debtor, the consideration for which, in whole or in part, is based on" dischargeable debt. 11 U.S.C. § 524(c); DuBois, 276 F.3d at 1022. When Beyers filed his counterclaim, there were a few cases suggesting that a creditor's promise to forego foreclosure on a pre-bankruptcy security interest constituted new

and sufficient consideration to support a debtor's promise to repay discharged debt. <u>Minster State Bank v. Heirholzer (In re Heirholzer)</u>, 170 B.R. 938, 940–41 (Bankr. N.D. Ohio 1994). According to these cases, such agreements were not reaffirmation agreements subject to § 524(c), but were instead new contracts supported by independent consideration. <u>Id.</u> at 941 (holding that although a post-discharge promissory note was not a valid reaffirmation agreement, the note was still enforceable because the bank's promise to forego foreclosure of a mortgage constituted "new and sufficient consideration to support a binding post-discharge obligation" to repay discharged debt); <u>see also</u> <u>Watson v. Shandell (In re Watson)</u>, 192 B.R. 739, 747 (B.A.P. 9th Cir. 1996) ("The general rule concerning postpetition contracts versus reaffirmation of discharged debts is that the pivotal factor which serves to establish a valid post discharge contract is the existence of some separate consideration for the subsequent agreement." (citation and internal quotation marks omitted)). Appellants contend that these cases gave them a good faith belief that the consideration for the $650,000 promissory note was the independent value of the surviving liens or interests rather than Brad and Brenda's discharged debt.

The facts here do not support a good-faith belief that the surviving liens constituted the new and independent consideration necessary to make § 524(c) inapplicable under the cases Appellants rely on. The debt that Brad and Brenda owed under the $650,000 note mirrored the amount they owed FSBR before filing for bankruptcy. <u>Stabler</u>, 865 N.W.2d at 470. Appellants never appraised the surviving liens, but there is no evidence that the value of these liens was anything near the amount of the $650,000 note. Indeed, the state judge found that had Appellants foreclosed on their liens on the Stablers' property, Appellants "would have taken a significant loss on the various loans of Brad and Brenda and ECAS." App. 458. Relying on these facts, the Supreme Court of South Dakota concluded that Appellants should have known

33

that § 524(c) applied to the $650,000 note, notwithstanding the alleged split in authority on reaffirmation agreements:

> We do not think the law is so unclear as to render Defendants unaware of its application to Defendants' conduct. 11 U.S.C. § 524(c) states that a reaffirmation agreement is any "agreement between a holder of a claim and the debtor, the consideration for which, in whole or in part, is based on a debt that is dischargeable in a case under this title[.]" Any claim by Beyers that the consideration to forego foreclosure on liens that passed through bankruptcy is new consideration to which this statute does not apply is unconvincing in the context of this case. There is no indication that any sort of valuation was done on the liens that survived bankruptcy. Instead, Defendants sought out Stablers to renew all obligations that they owed prior to the bankruptcy, in the same form and amount that Brad and Brenda personally owed pre-bankruptcy. We see no attempt by Defendants to enter into an entirely new arrangement based on the value of the surviving liens.

Stabler, 865 N.W.2d at 478; see also id. at 478–79 ("[I]t is clear to this Court that Defendants entered into an agreement, 'the consideration for which, in whole or in part, [was] based' on discharged debt, and that any agreement to pay was not voluntarily entered into by [the Stablers]." (first alteration in original)). The Supreme Court of South Dakota's conclusion is consistent with some of the cases cited by Appellants for their good faith argument. See BR Doc. 35-1 at 31. In Shields v. Stangler (In re Stangler), 186 B.R. 460 (Bankr. D. Minn. 1995), for instance, the bankruptcy court recognized that when the amount the debtor owes under the post-bankruptcy contract exceeds the value of the surviving lien, "the consideration might well be, in part, based on the discharged debt." Id. at 463 n.2. And in In re Watson, the Ninth Circuit BAP explained that "if a debtor assumes the same obligations under a new agreement as existed under a former, such a discharged debt obligation would preclude a postpetition agreement from being considered a new and separate agreement." 192 B.R. at 747.

Beyers's conduct surrounding the $650,000 note further undermines Appellants' good faith argument. When ECAS faced severe financial difficulties, Beyers encouraged Brad and Brenda to file for bankruptcy and directed them to FSBR's own attorney to use as their bankruptcy attorney. Based on the state court findings, Beyers convinced Brad and Brenda that he was acting in their best interest, but his true goal was to control Brad and Brenda's financial situation so that he could claim their discharged debts to FSBR remained owing. App. 457–58. To this end, according to state court findings, Beyers "devised a scheme" to get Brad and Brenda to continue paying FSBR for debt that had been discharged. App. 458. This scheme involved Beyers "pressuring" Brad and Brenda, Stabler, 865 N.W.2d at 478, and using "coercive behavior" to get them to sign the $650,000 note, the accompanying CREM, and the notes in favor of Schurrs and Ernst, App. 458. Beyers used Schurrs and Ernst as straw men, as the state court put it, to reestablish the discharged debt through another party before its transfer back to Beyers. App. 13–14. The state judge found that the $650,000 promissory note was "not knowingly and consensually accepted by Brad and Brenda," and that no bankruptcy court would have concluded that reaffirming the discharged debt was in Brad and Brenda's best interest. App. 458. As the bankruptcy judge recognized, Beyers's use of a scheme and his pursuit of Brad and Brenda to sign multiple agreements beyond the $650,000 note is inconsistent with an honest belief that the $650,000 note was enforceable. App. 548–49. Appellants contend that under the cases they rely on, Beyers's conduct is irrelevant to whether they had a good faith belief that the $650,000 note was enforceable. This Court disagrees. Although the cases Appellants rely on held that a promise to forego foreclosure can constitute "new and sufficient consideration," these cases do not hold that a creditor can use a lien to coerce a debtor into paying discharged debt. Nor do these cases suggest that a creditor can engage in the sort of overreach Beyers engaged in

here without violating the discharge injunction. The purpose of the discharge injunction has always been "to ensure that . . . the debtor will not be pressured in any way to repay" a discharged debt. Everly, 346 B.R. at 795 (citation and internal quotation marks omitted). The few cases Appellants cite do not give rise to a good faith belief that a creditor can engage in the very behavior the injunction was designed to prevent simply because the creditor's interaction with the debtor involves a promise not to foreclose on a secured position.

In sum, Appellants' good faith argument is unconvincing given the similarity between the debt Brad and Brenda owed before bankruptcy and the debt they owed under the $650,000 note, the lack of any evidence that the liens were worth anywhere near $650,000, the continued effort to securitize and collect on that discharged debt, and Beyers's conduct as set forth at length in state court findings and decisions. Clear and convincing evidence supports the bankruptcy judge's conclusion that Appellants knew of the discharge injunction and willfully violated it.

**III.    Conclusion**

For the reasons stated above, it is hereby

ORDERED that the bankruptcy judge's 2016 decision holding Appellants in contempt and imposing sanctions is affirmed.

DATED this 30ᵗʰ day of March, 2017.

BY THE COURT:

ROBERTO A. LANGE
UNITED STATES DISTRICT JUDGE

36